## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

America First Legal Foundation,

       *Plaintiff,*

v.

JOHN G. ROBERTS, in his official capacity as
Presiding Officer of the Judicial Conference of
the United States, et al.,

       *Defendants.*

Civil Action No. 1:25-1232 (TNM)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO MOTION TO DISMISS

WILLIAM SCOLINOS
DANIEL EPSTEIN
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
daniel.epstein@aflegal.org

*Counsel for Plaintiff*

# Table of Contents

Table of Contents...................................................................................................... i

Table of Authorities................................................................................................ ii

Introduction ............................................................................................................ 1

Summary of the Argument ..................................................................................... 2

Statement of the Case ............................................................................................ 3

Legal Standard ....................................................................................................... 4

I.     FOIA Textually Applies to the Judicial Conference and the Administrative Office.....................................................................................................................4

          A.  The Judicial Conference and the Administrative Office Are Executive Agencies Subject to FOIA Because They Engage in Executive Functions........................................................................... 5

          B.  The Judicial Conference and the Administrative Office Are Not Within FOIA's Express Exclusion of the Courts of the United States, and They Are Not in the Judicial Branch......................................... 7

          C.  In Creating the Judicial Conference and Administrative Office, Congress Merely Redirected Executive Powers to These Agencies .................................................................................................. 10

          D.  Officers of the Judicial Conference and the Administrative Officer are Executive Officers.................................................................... 14

          E.  The Judicial Conference and the Administrative Office Exercise Executive Functions........................................................................ 16

II.    The Statutory Text Supports The Plain Reading of FOIA. ............................ 17

III.   Conclusion................................................................................................... 19

i

## Table of Authorities

### <u>Cases</u>

*Armstrong v. Exec. Off. of the President,*
    90 F.3d 553 (D.C. Cir. 1996) ................................................................................. 7

*Burgess v. United States,*
    553 U.S. 124 (2008) ........................................................................................... 18

*Castanon v. United States,*
    444 F. Supp. 3d 118 (D.D.C. 2020) ................................................................... 4

*Chandler v. Jud. Council of Tenth Cir. of U.S.,*
    398 U.S. 74 (1970) ............................................................................................. 8

*Cooper Indus., Inc. v. Aviall Servs., Inc.,*
    543 U.S. 157 (2004) ........................................................................................... 18

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.,*
    585 F. Supp. 3d 63 (D.D.C. 2022) ..................................................................... 4

*Dong v. Smithsonian Inst.,*
    125 F.3d 877 (D.C. Cir. 1997) ........................................................................... 18

*Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.,*
    917 F.2d 581 (D.C. Cir. 1990) ........................................................................... 18

*Gage v. U.S. Equal Emp. Opportunity Comm'n,*
    No. 23-4232, 2025 WL 1983947 (9th Cir. July 17, 2025) ................................. 7

*Lucia v. Sec. & Exch. Comm'n,*
    585 U.S. 237 (2018) ...........................................**Error! Bookmark not defined.**

*Martinez v. Admin. Off. of U.S. Courts,*
    Civ. A. No. 21-1200, 2022 U.S. Dist. LEXIS 239946 (W.D. Tex. Mar. 9, 2022)
    *aff'd* No. 22-50227, 2023 WL 2474218 (5th Cir. Mar. 13, 2023) ....................... 16

*Med. Imaging & Tech. All. v. Libr. of Cong.,*
    103 F.4th 830 (D.C. Cir. 2024) ........................................................................... 9

*Mistretta v. United States,*
    488 U.S. 361 (1989) ..................................................................................... 13, 15

*Petit v. U.S. Dep't of Educ.*,
  675 F.3d 769 (D.C. Cir. 2012) ........................................................................ 18

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ........................................................................................ 4

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ...................................................................... 4

*Tashima v. Admin. Off. of U.S. Cts.*,
  967 F.2d 1264 (9th Cir. 1992) ................**Error! Bookmark not defined.**, 8, 11

*Trump v. Mazars USA, LLP*,
  591 U.S. 848 (2020) ........................................................................................ 13

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) .......................................................................................... 18

*United States v. Raddatz*,
  447 U.S. 667 (1980) ........................................................................................ 7

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
  17 F.3d 1446 (D.C. Cir. 1994) ...................................................................... 9, 10

## United States Constitutional Provisions

Article II § 2 ...................................................................................................... 15

## Statutes

5 U.S.C. § 551(1)(B) ........................................................................................ 2, 7

5 U.S.C. § 552 .................................................................................................. 17

5 U.S.C. § 552(a)(4)(B) .................................................................................... 19

5 U.S.C. § 552(f)(1) .......................................................................................... 6, 9

5 U.S.C. § 552a(g)(1) ........................................................................................ 19

5 U.S.C. § 701(b)(1)(B) ...................................................................................... 8

5 U.S.C. § 706 .................................................................................................. 19

5 U.S.C. § 1212 ........................................................................................... 19

5 U.S.C. § 2104 .................................................................................... 14, 16

5 U.S.C. § 2104(a)(1)(B) ...................................................................... 15, 15

5 U.S.C. § 13121 ......................................................................................... 19

28 U.S.C. § 331 ...................................................................... 8, 13, 13, 15, 17

28 U.S.C. § 601 ...................................................................... 8, 14, 16, 18

28 U.S.C. § 602(a) ....................................................................................... 6

28 U.S.C. § 604(a)(1) ................................................................................... 6

28 U.S.C. § 607 .................................................................................... 14, 14

28 U.S.C. § 609 .......................................................................................... 14

Pub. L. No. 76-299, 53 Stat. 1223 ........................................................ 5, 17

## **Other Authorities**

*Freedom of Information Act*, U.S. Equal Emp. Opportunity Comm'n ........................ 7

Hearings on S. 188 before a Subcommittee of the Senate Committee on the
    Judiciary, 76th Cong., 1st Sess., 12 (1939) ............................................ 8

Hon. Steven J. Menashi & Daniel Z. Epstein, *Congressional Incentives and the
    Administrative State*, 17 NYU J. L. & LIBERTY 172, 181 (2024) ........................ 5

*The Executive Role in Judicial Administration*, FED. JUD. CTR. .......................... 11, 12

*Understanding the Federal Courts,* U.S. Cts.... .......................................... 1

## Introduction

The judicial power of the United States is limited to courts' interpreting the constitutionality of federal laws and resolving other disputes arising under federal law, whether federal question cases or cases involving disputes between citizens of different states where an amount in controversy is properly pleaded. Courts do not create law; the power to legislate is reserved for Congress. Courts do not enforce the law; the executive power is reserved for the President. Administrative Office of the U.S. Courts, *Understanding the Federal Courts* 1–2, U.S. Cts., https://perma.cc/Q7EA-7BAT (last visited Aug. 21, 2025). Thus, "judicial" powers extend only to the resolution of cases or controversies. *Id.* at 6.

Because of the clear restraints the Constitution places on the judiciary, Congress created "[s]everal executive branch agencies [to] assist the judiciary with its administrative operations." *Id.* at 2. The Judicial Conference of the United States ("Judicial Conference" or "Conference") and the Administrative Office of the United States Courts ("Administrative Office") engage in executive functions, namely, they have the power to issue investigative subpoenas and respond to (and have responded to) congressional oversight. Those are unmistakably and undisputedly executive functions and are tantamount to Defendants' position failing as a matter of law. In addition, when the courts are authorized to appoint officers, the Constitution and statutes contemplate those officers to be executive officers, not judicial officers. Defendants, however, argue that such officers are judicial in nature, rather than employees or clerks. Indeed, if the courts themselves can appoint judicial officers,

1

then there exists an end run around the President's constitutional power to appoint judges.

## Summary of the Argument

The Defendants do not dispute that the Plaintiff submitted Freedom of Information Act ("FOIA") requests to them, that they failed to fulfill those requests, or that the Plaintiff has standing to sue. Instead, their only argument for dismissal is that the Judicial Conference and the Administrative Office are not subject to FOIA. Motion to Dismiss at 6. That argument fails because, as explained above and throughout the arguments below, the Judicial Conference and the Administrative Office are agencies exercising executive functions, and thus are subject to FOIA.

The Defendants' first argument is that the Judicial Conference and the Administrative Office are neither executive nor independent agencies, so they have no obligation to comply with FOIA requests. Motion to Dismiss at 6–8. However, the Defendants do not address the Plaintiff's primary argument for why they are subject to FOIA: the Judicial Conference and the Administrative Office exercise executive functions; they are not Article III adjuncts; and thus they are executive agencies subject to FOIA.

Next, Defendants posit that the Judicial Conference and the Administrative Office were explicitly excluded from complying with FOIA. Motion to Dismiss at 8–10. Defendants' argument overbroadly applies an exemption applying to "courts of the United States," 5 U.S.C. § 551(1)(B), to an entire branch of government without countenancing the argument that the Defendants' functions determine their status under the Administrative Procedure Act ("APA") and FOIA. Any reading of the

2

phrase "courts of the United States" to exempt the Judicial Conference and the Administrative Office conflicts with the text of that exclusion. Defendants' reading would create no limits to the ability of the judges composing the Conference or overseeing the Administrative Office to begin supervising the activities of Article III judges—a result tantamount to breaching judicial independence. Accordingly, the Judicial Conference and the Administrative Office are not "courts of the United States" because they exercise numerous delegated executive functions. They are therefore subject to the APA and FOIA as "independent establishment[s]," §§ 104, 105, and "independent regulatory agenc[ies]." § 552(f)(1). Am. Compl. ¶ 27. As such, the Defendants' refusal to fulfill the Plaintiff's FOIA requests was unlawful. The Court should deny Defendants' motion to dismiss.

<u>**Statement of the Case**</u>

On July 30, 2024, the Plaintiff submitted FOIA requests to the Judicial Conference and the Administrative Office seeking records of communications between the agencies and Senator Whitehouse, Representative Johnson, or any one of their staff members. Am. Compl. ¶ 23 (citing Am. Compl. Ex. 1, 2). On September 6, 2024, Ethan Torrey, Legal Counsel to the Supreme Court of the United States, responded to AFL's request to the Judicial Conference and stated the agency's position that both the Judicial Conference and the Administrative Office are exempt from the FOIA. *Id.* ¶ 24 (citing Am. Compl. Ex. 3). On November 8, 2024, Andrew Grant, Financial Disclosure Committee Counsel to the Administrative Office, replied

to Plaintiff's request to the Administrative Office, stating the agency's belief that the Administrative Office is exempt from the FOIA. *Id.* ¶ 25 (citing Am. Compl. Ex. 4).

The Plaintiff then filed this lawsuit, and the Defendants moved to dismiss on the ground that they are exempt from complying with the FOIA. *See* "Motion to Dismiss," ECF No. 14.

## Legal Standard

"When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court 'must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F.Supp.3d 63, 69 (D.D.C. 2022) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "[I]t is well-settled that the complaint will be construed broadly and liberally," *Castanon v. United States*, 444 F.Supp.3d 118, 124 (D.D.C. 2020) (internal citation omitted), and "a complaint need not pin plaintiff's claim for relief to a precise legal theory," *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## Argument

### I.    FOIA Textually Applies to the Judicial Conference and the Administrative Office

This case can be resolved straightforwardly: Congress imbued the Judicial Conference and Administrative Office with executive powers, so, for Title 5 purposes, they are executive agencies and are subject to FOIA. "Congress has sought to delegate its oversight function as well. Title 5, where the APA is codified, also now includes a series of mechanisms that delegate investigative authority to the [executive branch]

and mandate reporting to Congress." Hon. Steven J. Menashi & Daniel Z. Epstein, *Congressional Incentives and the Administrative State*, 17 NYU J. L. & LIBERTY 172, 181 (2024). Statutory text and history support the textual reading of the Freedom of Information Act that would declare that the Judicial Conference and Administrative Office are agencies that exercise executive functions, requiring Defendants to comply with Plaintiff's FOIA requests.

### A. The Judicial Conference and the Administrative Office Are Executive Agencies Subject to FOIA Because They Engage in Executive Functions

The Judicial Conference and the Administrative Office are executive agencies subject to FOIA because they exercise executive functions. Am. Compl. ¶¶ 27–28, 41. Defendants concede that Congress assigned duties to the Judicial Conference that were "previously handled by the Department of Justice," an executive agency. Motion to Dismiss at 11 (quoting Charles Evans Hughes, Address of C.J. Hughes, 26 A.B.A. J. 472-73 (June 1940)); Motion to Dismiss at 2–3 ("Until the creation of the Administrative Office in 1939, the lower federal courts had been partially administered by the Executive Branch of the United States government—first by the Department of the Treasury, then by the Department of Interior, and then by the Department of Justice. In 1939, however, Congress transferred administrative support for the lower federal courts from the Department of Justice to the newly created Administrative Office, under the supervision of the Supreme Court of the United States and the Judicial Conference." (citing Pub. L. No. 76-299, 53 Stat. 1223 (Aug. 7, 1939)); Motion to Dismiss at 12 ("In creating the Judicial Conference and the Administrative Office, Congress transferred administrative support for the lower

federal courts from the executive branch to the judicial branch to promote judicial independence."). Defendants also do not dispute that the Judicial Conference and Administrative Office today exercise many of the same functions previously handled by the Department of Treasury, the Department of Interior, and the Department of Justice for more than ninety years before the creation of the Administrative Office. Motion to Dismiss at fn. 3; *see also* Motion to Dismiss at 4 ("The Director's duties include 'supervis[ing] all administrative matters relating to the offices of clerks and other clerical and administrative personnel of the courts,' [28 U.S.C. § 604(a)(1),] fixing the compensation of judicial employees, disbursing appropriated funds 'for the maintenance and operation of the courts,' [§ 604(a)(4),] purchasing property 'for the judicial branch of Government (except the Supreme Court),' [§ 604(a)(10)(A),] and accepting gifts of personal property 'for the purpose of aiding or facilitating the work of the judicial branch of Government.' [§ 604(a)(17).] The Administrative Office Director appoints Administrative Office employees and fixes their compensation." (citing 28 U.S.C. § 602(a)).

Because they exercise executive functions, it is of no consequence that Defendants highlight that the organic statutes for the Judicial Conference and the Administrative Office do not use the magic words of "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency" that would unquestionably subject them to FOIA under 5 U.S.C. § 552(f)(1). Motion to Dismiss

at 7. Function matters for whether an entity is an executive branch agency. *Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996).

### B. The Judicial Conference and the Administrative Office Are Not Within FOIA's Express Exclusion of the Courts of the United States, and They Are Not in the Judicial Branch

Defendants claim that the APA carves out the courts of the United States from the definition of agency. Motion to Dismiss at 7–9, 12.; 5 U.S.C. § 551(1)(B). However, the Ninth Circuit has already interpreted the Administrative Office as not a court but a non-Article III adjunct. In *Tashima*, the court held that "[d]espite the fact that the [Administrative Office] works directly for the federal judiciary, it is not an Article III entity." *Tashima v. Admin. Off. of U.S. Cts.*, 967 F.2d 1264, 1269 (9th Cir. 1992). In *Tashima*, the court listed two "fundamental attributes" that "distinguish Article III entities from other judicial or quasi-judicial bodies: life tenure and guaranteed salary." *Id.* (citing *N. Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 51 (1982)). "There exist several bodies which are closely associated with Article III courts, administrative agencies which make initial factual determinations for courts, like the Equal Employment Opportunity Commission, U.S. Magistrates, and the Administrative Office. However, the Supreme Court has consistently found that bodies which lack the attributes of life tenure and guaranteed salary, no matter how closely associated with Article III entities they may be, are not Article III entities themselves." *Id.* at 1269; *see, e.g. Gage v. U.S. Equal Emp. Opportunity Comm'n,* No. 23-4232, 2025 WL 1983947, at *1 (9th Cir. July 17, 2025); *Freedom of Information Act*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://perma.cc/2WSQ-LKPN; *United*

*States v. Raddatz*, 447 U.S. 667, 681–83 (1980) (recognizing U.S. Magistrates are not Article III entities). Membership of the Judicial Conference is capped at five successive years, 28 U.S.C. § 331, and the Director and a Deputy Director of the Administrative Office are "subject to removal by the Chief Justice of the United States." 28 U.S.C. § 601. Instead, the Supreme Court has recognized a distinct classification for these bodies, calling them "non-Article III adjuncts." *Tashima*, 967 F.2d at 1269 (quoting *Marathon*, 458 U.S. at 84). Accordingly, because the Administrative Office is distinct from the judicial branch by not being a "court[] of the United States," the [Administrative Office] is not an Article III entity, but rather a 'non-Article III adjunct' like U.S. Magistrates and the ECC." *Id.*

Even if the Administrative Office were viewed as being entirely encompassed within Article III, which it certainly is not, the APA's carveout applies only to "courts of the United States," 5 U.S.C. § 701(b)(1)(B), not administrative offices serving the courts or officers appointed by someone other than the courts themselves. The Administrative Office must instead be an establishment in the executive branch. In *Chandler*, upon which Defendants rely, the Supreme Court cautioned that "[t]he role of the Administrative Office, and its Director, was to be 'administrative' in the narrowest sense of that term." *Chandler v. Jud. Council of Tenth Cir. of U.S.*, 398 U.S. 74, 97 (1970). Congress did not intend for the Administrative Office to have any role in the adjudication of cases before courts. *Id.* at 98 (citing Hearings on S. 188 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 1st Sess., 12 (1939) (calling the role of the Administrative Office "purely administrative,"

giving its Director no "supervision or control over the exercise of purely judicial duties")). Accordingly, the entire Administrative Office, and the Judicial Conference for the same reasons, are at least partially distinct from Article III courts, making them executive agencies subject to FOIA. 5 U.S.C. § 552(f)(1).

Last, Defendants note D.C. Circuit precedent generally suggesting that FOIA's exception for "courts of the United States" "applies to the entire judicial branch of government." Motion to Dismiss at 7 (citing *Wash. Legal Found. v. U.S. Sentencing Comm'n.*, 17 F.3d 1446, 1449 (D.C. Cir. 1994)). But that has no relevance here, for the statutory text and context show that the Judicial Conference and the Administrative Office are simply not in the judicial branch for purposes of FOIA. Plus, the D.C. Circuit's decision in *Wash. Legal Found.* "merely summarize[d] the holding of [prior precedents] in dictum." *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 840 (D.C. Cir. 2024); *Wash. Legal Found.* 17 F.3d at 1450 ("we need not decide whether the APA excludes the entire judicial branch from the definition of 'agency'"). And *that* "precedent" has been abrogated by the D.C. Circuit. *Med. Imaging & Tech. All.* 103 F.4th at 840, n.4 (conducting similar analysis to determine the governmental branch of the Library of Congress to find that, "[e]ven if these cases generally classify the [Library of Congress] as a component of 'the Congress' under the APA," the Library "is squarely a component of the Executive Branch in its role as a copyright regulator" given its "important executive power," notwithstanding any "historical association with Congress") (discussing *Clark v. Libr. of Cong.*, 750 F.2d

89, 102 (D.C. Cir. 1984), and *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985)).

Even if the Judicial Conference and Administrative Office are found to be in the judicial branch, the agencies exercise executive functions and should accordingly be subject to FOIA. In citing *Wash. Legal Found.* to support their claim that "[t]he phrase 'courts of the United States' is interpreted such that this exemption applies to the entire judicial branch of government," Motion to Dismiss at 6–7, Defendants critically left out the end of that quote, the full quote reading:

> Over the years, virtually every case interpreting the APA exemption for "the courts of the United States" has held that the exemption applies to the entire judicial branch—*at least to entities within the judicial branch that perform functions that would otherwise be performed by courts.*

*Wash. Legal Found.*, 17 F.3d at 1449 (emphasis added). All this confirms that no binding precedent addresses or forecloses the statutory arguments above. Though the Plaintiff reserves the right to challenge at a future stage any circuit precedent expanding the definition of "courts of the United States" beyond "courts of the United States," the Judicial Conference and the Administrative Office are outside the judicial branch for FOIA purposes, because the functions the agencies perform must serve some role in the determination. Defendants' argument fails, and no binding precedent exists.

## C. In Creating the Judicial Conference and Administrative Office, Congress Merely Redirected Executive Powers to These Agencies

The Administrative Office "was not intended to govern or make policy for the Judiciary. It was established, in large part, to relieve the Judiciary from possible

interference by the Department of Justice, which had previously carried out the administrative duties of the courts." *Tashima*, 967 F.2d at 1271. The Judicial Conference must be an executive branch agency because it exercises executive functions. Am. Compl. ¶ 36.

The Judicial Conference's "early role was mainly advisory" until 1939 when Congress created the Administrative Office, leading to the Judicial Conference "evolv[ing] to become the national policy-making body for the federal courts" while the Administrative Office became the "centralized administrative body." *See The Executive Role in Judicial Administration*, FED. JUD. CTR., https://perma.cc/C2EH-4DWZ (last visited Aug. 16, 2025). However, from 1789 until 1922, the year Congress created the Judicial Conference, "Congress placed responsibility for judicial administration with the executive branch, shifting it between various departments." *Id*. "From 1789 until 1849, the Treasury Department supervised the financial administration of the federal courts . . . thus connecting it to the daily operation of federal courts throughout the nation." *Id*. Federal officials were required to communicate regarding matters of salary, construction, and resources, to submit proper accounts, and to submit other reports and records to the department. *Id*. Then, in 1849, the Department of Interior "assumed oversight of the financial administration of the federal courts." *Id*. "As Treasury officials had done before, Interior officials corresponded regularly with these individuals about the operations of their courts . . . [and] closely supervised the financial management of each federal court and enforced spending regulations." *Id*. The Department of State also played a

key role in judicial administration until almost one hundred years later when Congress established the Department of Justice as "the principal administrative agency for the federal judiciary." *Id.* "The attorney general assumed the 'supervisory powers now exercised by the Secretary of the Interior over the accounts of the district attorneys, marshals, clerks, and other officers of the courts of the United States,'" and "[i]n addition to supervising the courts' financial accounts and preparing budget requests, the Department of Justice compiled statistics on the business of the federal courts, procured office supplies, and developed more uniform standards of personnel management." *Id.* "Over time, Congress strengthened the Justice Department's administrative control of the federal courts . . . permit[ing] the attorney general to prescribe rules and regulations . . . [and] began to give the department a greater role in appointing and compensating court personnel." *Id.* Additionally, "the Justice Department was responsible for investigating alleged misconduct by federal judges and making reports to the House of Representatives on whether there was a basis for impeachment." *Id.* All of these responsibilities are executive functions, now done by the Judicial Conference and the Administrative Office. Moreover, the original drafting of the legislation creating the Administrative Office provided for the Supreme Court to select the director of the Administrative Office, "but, at the insistence of Chief Justice Hughes, the office was to operate under the supervision of the [Judicial Conference] rather than the Court." *Id.*

Perhaps the most executive of the Judicial Conference's functions is its authority to "hold hearings, take sworn testimony, issue subpoenas and subpoenas

duces tecum, and make necessary and appropriate orders in the exercise of its authority." Am. Compl. ¶ 36. (quoting 28 U.S.C. § 331) (These executive powers were added later in statutory amendments in which Congress expanded the agency's executive powers to include issuing and enforcing subpoenas). Nowhere in the Motion to Dismiss does the government countenance the reality that the subpoena power, 28 U.S.C. § 331, is clearly outside of a narrow administrative power of Article III adjuncts and is quintessentially executive. Further, Defendants identify no case law or statutory basis for the Administrative Office to respond to congressional oversight. These functions are ultra vires of a court or an administrative adjunct and reveal executive functioning. Defendants provide no basis in law or fact for why issuing rules and subpoenas and responding to Congress are not executive functions. *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862 (2020).

Defendants' only response here is that this understanding is supposedly foreclosed by the Supreme Court's decision in *Mistretta v. United States*, 488 U.S. 361, 388–90 (1989). Motion to Dismiss at 8. But *Mistretta* did not consider the agency's status for Title 5 or FOIA purposes. It was about a constitutional defect— placing executive powers in the United States Sentencing Commission, which, although placed by Congress in the Judicial Branch, "is not a court and does not exercise judicial power." *Mistretta*, 488 U.S. at 384–85 ("Rather, the Commission is an 'independent' body comprised of seven voting members including at least three federal judges").

13

### D.   Officers of the Judicial Conference and the Administrative Office are Executive Officers

The Administrative Office is also not a court: it is expressly prohibited from engaging in the practice of law and engages in executive functions. 28 U.S.C. § 607 ("An officer or employee of the Administrative Office shall not engage directly or indirectly in the practice of law in any court of the United States").

The Administrative Office is an entity that is distinct from "courts of the United States." References to "courts" within its organic statute clearly refer to entities that are distinct from the Administrative Office. *See*, *e.g. id.*; 28 U.S.C. § 609 ("The authority of the courts to appoint their own administrative or clerical personnel shall not be limited by any provisions of this chapter"). In addition, like executive agencies, the Administrative Office has been responsive to congressional oversight. Am. Compl. ¶ 43.

The Administrative Office is also run by an officer of an executive agency. Am. Compl. ¶ 42; *compare* 28 U.S.C. § 601 ("The Director and Deputy Director shall be deemed to be officers for purposes of title 5, United States Code") *with* 5 U.S.C. § 2104 (defining "officer" as an individual who is: (1) required by law to be appointed by the President, "a court of the United States," the head of an executive agency, or the Secretary of a military department; (2) "engaged in the performance of a Federal function under authority of law or an Executive act;" and (3) "subject to the supervision" of one of the previously listed authorities "or the Judicial Conference of the United States, while engaged in the performance of the duties of his office.").

Defendants respond that an officer can be appointed by a court under 5 U.S.C. § 2104(a)(1)(B)—that is correct. However, Defendants fail to reconcile the language 5 U.S.C. § 2104(a)(1)(B), permitting "a *court* of the United States" (emphasis added) to appoint an officer, with 28 U.S.C. § 601, stating that the Administrative Office "shall be supervised by a Director and a Deputy Director appointed and subject to removal *by the Chief Justice of the United States*." (emphasis added). For 5 U.S.C. § 2104(a)(1)(B) to apply to the Director and Deputy Director, Defendants' position relies on an argument it does not even attempt to make: that the Chief Justice is himself, for APA and FOIA purposes, a court of the United States. *See Mistretta*, 488 U.S. at 384–85 (noting that judges sitting on the U.S. Sentencing Commission did not make it a court, "[r]ather, the Commission is an 'independent' body" and that "Congress' decision to create an independent rulemaking body . . . and to locate that body within the Judicial Branch is not unconstitutional unless Congress has vested in the Commission powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary").

Further, the appointments clause states, "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. If the Judicial Conference is a judicial branch court of law, as Defendants contend, then the Conference as a whole, *see* 28 U.S.C. § 331, should appoint the Director and Deputy Director of the conference—not the Chief Justice as a singular individual.

Cases like *Martinez v. Admin. Off. of U.S. Courts*, Civ. A. No. 21-1200, 2022 U.S. Dist. LEXIS 239946 at *3 (W.D. Tex. Mar. 9, 2022) aff'd No. 22-50227, 2023 WL 2474218, at *1 (5th Cir. Mar. 13, 2023) are easily distinguishable from the present case: Plaintiff has sued both the Chief Justice and the Administrative Office because only courts, and not a single Justice, may appoint a federal officer. If the appointment of the Administrative Office's director was improper, then it invalidates its actions, including its ignoring Plaintiff's FOIA request, until a constitutionally proper ratification occurs. Defendants do not contest Plaintiff's standing to raise appointments clause arguments, so any denial is waived. *Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 239 (2018).

As such, so long as Plaintiff shows that the Administrative Office engages in executive functions, 5 U.S.C. § 2104 does not justify the appointment by the Chief Justice, and 28 U.S.C. § 601 should be struck as it allows the Chief Justice to appoint an executive officer.

### E.    The Judicial Conference and the Administrative Office Exercise Executive Functions.

The plain reading of the Freedom of Information Act conflicts with the Defendants' interpretation under which the Judicial Conference and the Administrative Office are "courts of the United States." Motion to Dismiss at 7–9.

Defendants ask the Court to look to the agencies' organic statutes to determine that the Judicial Conference and the Administrative Office are not "independent establishments," "independent executive agencies," or "independent regulatory agencies." Motion to Dismiss at 14–15. Defendants point out that these magic words

do exist in some agencies' organic statutes but are absent from those of the Judicial Conference's and the Administrative Office's organic statutes. *Id*. 28 U.S.C. § 331 (referring to the Judicial Conference as a "conference"); Pub. L. No. 76-299, 53 Stat. 1223 (Aug. 7, 1939) ("There shall be at the seat of government an establishment to be known as the Administrative Office of the United States Courts"). Accordingly, Defendants argue that the organic statute holds the answer to a body's status under the FOIA. Motion to Dismiss at 14–16. Accordingly, these Defendants' organic statutes support Plaintiff's reading that statute mirrors FOIA's definition of "agency" by describing the Judicial Conference and Administrative Office as entities that exercise executive functions—not "courts of the United States." Defendants' contrary arguments gloss over statutory text, ignore applicable canons of interpretation, disregard repeated instances in Title 5 of Congress granting executive powers to the Judicial Conference and Administrative Office, separately from the "courts of the United States" in the judicial branch, and overread precedents that did not consider the question of agencies' *functions*. Whatever the Judicial Conference and Administrative Office might be for constitutional purposes, they are agencies subject to FOIA under Title 5.

## II.     The Statutory Text Supports the Plain Reading of FOIA

FOIA, which is part of the Administrative Procedure Act ("APA"), is contained within Title 5 and generally applies to executive branch "agencies." 5 U.S.C. § 552. Section 551(1) defines "agency" for purposes of FOIA's subchapter as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," not including "the Congress" or "the courts of the United

17

States" (and certain other entities). Section 552, in turn, says that for FOIA purposes, the term "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." § 552(f).

As the D.C. Circuit has explained, "the additional language of § 552(f) was added to FOIA in 1974 'to encompass entities that might have eluded the APA's definition in § 551(1).'" *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997) (quoting *Energy Rsch. Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C. Cir. 1990)); *see also Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (noting that "[t]he word 'includes' is usually a term of enlargement, and not of limitation"); *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 791 (D.C. Cir. 2012).

Thus, Defendants fail to point to any binding precedent holding that officers of Judicial Conferences and Administrative Officers are executive agencies exercising executive functions or that the powers under 28 U.S.C. § 601 exceed the Chief Justice's authority—much less any precedent that considers and resolves the statutory text and history arguments presented above. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents" (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)); *United States v. L.A. Tucker Truck Lines, Inc.*, 344

U.S. 33, 38 (1952) (where an issue was neither "raised in briefs or argument nor discussed in the opinion of the [c]ourt," there is no "binding precedent on th[e] point").

In sum, FOIA's text encompasses the Judicial Conference and the Administrative Office. The purpose of Title 5 is to create mechanisms of review: The APA, FOIA, and the Privacy Act have explicit judicial review provisions over executive branch agencies. *See*, *e.g.* 5 U.S.C. § 706; 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552a(g)(1). The Inspector General Act, Ethics in Government Act, and the Office of Special Counsel Act (all codified under Title 5) create internal administrative law permitting oversight of executive branch agencies. *See*, *e.g.* 5 U.S.C. App. 3 § 2; 5 U.S.C. App. 4 § 402(b); 5 U.S.C §§ 13121 *et seq*; 5 U.S.C. § 1212. Executive agencies are thus subject to rigorous review and oversight. But so are judges. Judges may be subject to impeachment; they are reviewable by higher courts and ultimately adjudicate mandamus relief against lower courts.

The Defendants' position is to have its cake and eat it too: to justify officers completely unaccountable to constitutional presumptions. The constitutional Framers designed our government to never allow such officers to exist.

## III.    Conclusion

For these reasons, the Court should deny Defendants' motion to dismiss.

Respectfully submitted,

_/s/ William F. Scolinos_

WILLIAM SCOLINOS
DANIEL EPSTEIN
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
daniel.epstein@aflegal.org

AUGUST 22, 2025