**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**AMERICA FIRST LEGAL**
**FOUNDATION,**

Plaintiff,

v.

Case No. 1:25-cv-1232 (TNM)

**JOHN G. ROBERTS, in his official**
**capacity as Presiding Officer of the Judicial**
**Conference of the United States,** *et al.*,

Defendants,

---

## MEMORANDUM OPINION

The Freedom of Information Act announced a policy of broad disclosure of government documents. Broad disclosure, however, does not mean unlimited disclosure. While FOIA promises access to many *Executive Branch* records, Congress excused itself and the courts from FOIA's reach.

In 2024, America First Legal Foundation ("America First") requested various documents from the Judicial Conference of the United States and Administrative Office of the United States under FOIA. Both entities rejected the request on the basis that they are part of the Judiciary, so FOIA does not apply to them. America First disagreed. Taking a narrower view of FOIA's court-documents carve out, America First sees the Judicial Conference and Administrative Office as agencies subject to FOIA. So America First sued and asks the Court to compel the heads of the Judicial Conference and Administrative Office to comply with its FOIA request. *See* Am. Compl., ECF No. 2.

Defendants moved to dismiss America First's Complaint for lack of subject matter jurisdiction and for failure to state a claim. Mot. to Dismiss at 11, ECF No. 14.[1] They argue that both entities comprise part of the Judicial Branch, which exempts their records from FOIA as those of "courts of the United States." 5 U.S.C. § 551(1)(B). Because the Judicial Conference and the Administrative Office indeed fall outside FOIA's reach, the Court lacks subject matter jurisdiction over the records request. So it will grant the motion to dismiss.

## I.

"To the Framers, the separation of powers and checks and balances were more than just theories. They were practical and real protections for individual liberty in the new Constitution." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 116 (2015) (Thomas, J., concurring in the judgment). In creating the Constitution's system of divided power, the Founders "considered it essential that 'the judiciary remain[] truly distinct from both the legislature and the executive,'" and thus free from political winds. *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting Federalist No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961)).

Judicial independence defined federal courts then as it does today. How courts operate, though, has changed dramatically. Until the end of the nineteenth century, the judicial machine was "characterized by its simplicity." Administrative Office of the U.S. Courts, *The History of the Administrative Office of the United States Courts: Sixty Years of Service to the Federal Judiciary* 3 (2000). Minimal costs and few cases meant that courts successfully operated as mostly "self-administered," isolated units. *Id.* at 3–4.

That changed as the country matured. In 1870, Congress created the Justice Department and mandated that it manage the federal courts. *Id.* Then, in 1891, Congress established the

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

circuit courts of appeals.  Act of March 3, 1891, ch. 517 § 6, 26 Stat. 826, 828.  With early twentieth century industrialization, an increase in federal laws prompted an "influx of new cases" that "threatened to overwhelm" the 150 federal judges then serving.  *History of the Administrative Office*, *supra*, at 4.  All the while, federal courts lacked a "consistent way of bringing together judges to solve common problems."  Marin K. Levy*, The Invention of the Judicial Administrative State*, 123 MICH. L. REV. 1051, 1061 (2025).  These challenges prompted judges, justices, bar members, and politicians alike to seek "reform and modernization of judicial administration."  *History of the Administrative Office*, *supra*, at 5.

Congress offered one solution—bringing judges together—in 1922, with legislation creating the Conference of Senior Circuit Judges, Act of Sept. 14, 1922, Pub. L. No. 67-298, § 2, 42 Stat. 837, 838 (codified as amended at 28 U.S.C. § 331 (2018)), what is now the Judicial Conference, *see* Act of June 25, 1948, ch. 646, 62 Stat. 902.   The Act provided that each year, a judge from every federal circuit would convene in Washington, D.C., to discuss issues facing the courts,  *see* 42 Stat. at 837–38, and to "disseminate[]" its ideas to "dispersed district judges and to Congress.  Peter G. Fish, *The Politics of Federal Judicial Administration*, 39 (1973).  The Conference would also "make a comprehensive survey of the condition of business in the courts of the United States" and transfer judges to or from circuits as needed.  *See* 28 U.S.C. § 331.  It was and remains a key means of promoting "uniformity" and the "expeditious conduct of court business" across federal courts.  *See id.*

Eliminating one problem prompted solutions to others.  Once judges had a collective body in the Judicial Conference, eyes moved to another problem in the judicial system—the Department of Justice's administrative role for the courts.  By the 1920s, the Department set salary classifications and appointment standards for court staff.  Fish, *supra*, at 96.  Its power

"evoked anguished cries of protest" and fear of Executive Branch abuse among judges and politicians. *Id.* As some hypothesized, for instance, the Attorney General could "force out of office an efficient and trustworthy Clerk" he did not like simply "by fixing his salary" so low that he must "resign his office." *Id.* (quoting Judges Charles M. Hough, Martin T. Manton, Julius M. Mayer, Henry Wade Rogers to Harry M. Daughtery, April 15, 1922, Administrative Office Correspondence).

Hesitation went both ways. Some Attorneys General also felt reluctant to manage the courts and judges. "What would [a judge] think," Attorney General Homer Cummings said in 1938, "if I wrote him a letter saying 'Why don't you speed up? He will think I am impertinent and will probably tell me so." Fish, *supra*, at 99 (citing U.S., Congress, Sentence, Committee on the Judiciary, *Hearings, on S. 3212, Administrative Office of the United State Courts*, 75th Cong., 3d Sess. at 13 (1938)) Tensions aside, too, court administration was low on the Department's priority list, so tasks like facilitating "intercircuit assignment[s] of judges" went undone. *Id.* at 102.

Congress ironed out these wrinkles in 1939, when it established the Administrative Office of the United States Courts. *See* Act of Aug.7, 1939, Pub. L. No. 76-299, 53 Stat. 1223, 1225–26 (codified as amended at 28 U.S.C. §§ 601–10 (2018)). The 1939 Act vested in the Administrative Office all "powers and duties" that the Justice Department or Attorney General had possessed "respecting clerks of courts, deputy clerks of courts, and clerical assistants, law clerks, secretaries, and stenographers . . . and librarians." *Id.* at 1226.

Instead of the Attorney General at the head, a Director and Deputy Director, both appointed by the Chief Justice and subject to removal by him after consulting the Judicial

Conference, would run the Administrative Office.  *See id.* at 1223.[2]  The Act provided that the Director would supervise "administrative matters" related to clerks' offices and clerical personnel, disburse appropriated funds for the courts' maintenance and operation, prepare statistical data and reports on the courts' business, purchase equipment and supplies, prepare an estimate of the Judiciary's annual budget.  *Id.* at 1223–25.

The Judicial Conference and Administrative Office serve their original purposes today, though both have grown.  In present form, the Conference's governing statute provides for numerous functions.  The Judicial Conference has authority to: (1) "promote uniformity of management procedures and the expeditious conduct of court business"; (2) "prepare plans for assignment of judges to or from circuits or districts where necessary"; (3) study "the operation and effect" of the federal rules and recommend changes to them; (4) submit "an annual report" of its proceedings and legislation recommendations to Congress; and (5) "consult" with the Marshals Service about "security requirements for the judicial branch."  *See* 28 U.S.C. § 331.

More, the Conference has grown as new circuit courts joined the federal Judiciary, and as representative district judges joined the Conference.  *See Judicial Conference of the United States: Members*, Federal Judicial Center, https://perma.cc/CE3F-BA7E.  Its areas of work have expanded too.  Originally, the Conference authorized five committees to address specific issues, but now it has twenty that cover topics ranging from budget to codes of conduct to case management to financial disclosures to technology and security.  *See About the Judicial Conference*, United States Courts, https://perma.cc/M86S-ZMTM (listing all committees).

---

[2]  The 1939 Act called what is now the "Deputy Director" the "Assistant Director."  *Compare* 53 Stat. at 1223, *with* Act of 1959, Pub. L. No. 86-370, § 5, 73 Stat. 650, 652 (codified as amended at 28 U.S.C. § 601 (2018)).

The Administrative Office likewise has expanded.  Once comprised of 77 employees, the Administrative Office personnel now measure over 1,000.  *History of Administrative Office*, *supra* at viii.  The Director still supervises "administrative matters" related to clerks' offices and clerical personnel, fixes judicial employees' compensation, disburses appropriated funds for the courts' maintenance and operation, purchases property for the judicial branch, and accepts gifts to "aid[] or facilitate[e] the work of the judicial branch."  28 U.S.C. § 604(a)(17).  But the Administrative Office has also taken on new tasks, for example, working to modernize the courts' electronic filing system.  *Director's Annual Report*, 2024, United States Courts, https://perma.cc/UM5L-YWHT.  As things change, its role as the administrative backbone for the courts remains the same.

***

This case touches on some of the inter-branch tensions that prompted Congress to create the Judicial Conference and Administrative Office nearly a century ago.

America First wants records from the Judicial Conference and Administrative Office concerning communications between both entities and Senator Sheldon Whitehouse, Representative Hank Johnson, or their staff members.  Am. Comp. ¶ 23.  In July 2024, it submitted FOIA requests to both entities along those lines.  *Id.*  A couple of months later, Legal Counsel to the Supreme Court denied America First's request to the Judicial Conference.  *Id.* ¶ 24.  The Judicial Conference, he reasoned, is part of the Judicial Branch and thus exempt from FOIA, which applies only to documents from executive agencies.  *Id.*  Soon after, Counsel to the Financial Disclosure Committee Counsel to the Administrative Office did the same in response to America First's request to the Administrative Office.  *Id.* ¶ 25.  Again, he reasoned that FOIA does not cover the Administrative Office, as an arm of the Judiciary.  *Id.*

Those answers prompted this lawsuit.  America First sued the Chief Justice, in his capacity as presiding officer of the Judicial Conference, and Judge Robert Conrad in his capacity as Director of the Administrative Office.  *Id.* ¶ 6.  It claims that they violated FOIA by declining to provide it with records responsive to its requests.  *Id.* ¶ 54.  America First argues that the Judicial Conference and Administrative Office are properly considered Executive Branch agencies that must comply with FOIA's disclosure demands.  *See id.* ¶¶ 6, 8.  America First seeks: (1) a declaration that the records it seeks must be disclosed; (2) a declaration that FOIA applies to the Judicial Conference and Administrative Office as independent agencies within the Executive Branch; (3) an order directing them to search for records responsive to Plaintiff's FOIA requests; (4) an order that Defendants produce records by a certain date; and (5) an award of attorney's fees and costs, as well as other relief.  *Id.* at 13–14.  Defendants moved for dismissal, Mot. to Dismiss at 23, and the Court heard oral argument, *see* Minute Entry, Nov. 19, 2025.  Because this Court lacks subject matter jurisdiction, it grants Defendants' motion to dismiss.[3]

## II.

Under Rule 12(b)(1), this Court presumes it lacks subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).  Federal courts have limited jurisdiction and "possess only that power authorized by Constitution and statute."  *Id.*  And when a defendant brings a challenge under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction.  *See id.*

---

[3]  America First listed individuals, not entities, as Defendants.  Am. Compl. ¶¶ 15, 18.  The Court could dismiss the case on this ground alone because FOIA applies to entities, not individuals. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).  But for the reasons that follow, America First's challenge would fail even had it properly listed entities.

In FOIA cases like this one, a plaintiff must show that a defendant withheld agency records before he can establish federal subject matter jurisdiction.  S*ee Am. Civil Liberties Union v. CIA*, 823 F.3d 655, 667–68 (D.C. Cir. 2016) (affirming dismissal of FOIA case for lack of subject matter jurisdiction because congressional records were not agency records).  That is because FOIA grants federal district courts jurisdiction only "to order the production of any *agency* records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B) (emphasis added).  Non-agency documents "are not subject to FOIA's disclosure requirement," and thus do not suffice.  *See United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 597 (D.C. Cir. 2004); *Banks v. Lappin*, 539 F. Supp. 2d 228, 241 (D.D.C. 2008) (dismissing for lack of subject matter jurisdiction FOIA claims against the President, Vice President, House, and Senate because the Office of the President and Congress were not agencies under FOIA).[4]

### III.

The case boils down to one issue.  Are the Judicial Conference and Administrative Office "agencies" subject to FOIA?

FOIA directs agencies to provide certain records in response to public requests.  5 U.S.C. § 552(a).  The Act defines an "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."  *Id.* § 551(1).  What an "agency" or "authority of the Government" means, it turns out, is not always obvious.  *See Partington v. Houck*, 723 F.3d 280, 289 (D.C. Cir. 2013) (noting that the "statutory definition of 'agency' is not entirely clear") (cleaned up).

---

[4]  Defendants asked the Court to dismiss either for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6).  Because the Court "cannot proceed at all in any cause" without jurisdiction, it addresses subject matter jurisdiction alone, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), although the Court's rationale would similarly apply to a 12(b)(6) analysis.

But § 552(f)(1) adds additional color.  It provides that the definition of "agency" "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f)(1).  Note the focus on the Executive Branch and so-called independent agencies. Indeed, FOIA covers most, but not all, Executive Branch entities.  *Cf. Kissinger v. Reps. Comm. for Freedom of the Press,* 445 U.S. 136, 156 (1980).

And setting aside what entities "agency" *includes*, a neighboring statutory provision names several that this definition *excludes*.  None is part of the Executive Branch.  As § 551 specifies, the meaning of "agency . . . does not include," "the Congress . . . the governments of the territories or possessions of the United States . . . the government of the District of Columbia" or "courts martial and military commissions."  5 U.S.C. § 551(A)–(G).  Also, and most relevant here, § 551 lists "the courts of the United States" as outside the definition of "agency."  *Id.* § 551(B).  Putting the pieces together, FOIA's definition of "agency" reaches many Executive Branch arms, but not those of its peer branches.

Guided by those contours, the Judicial Conference and Administrative Office fall outside FOIA's ambit.  For starters, neither is like the Executive Branch entities FOIA explicitly contemplates as examples of an "agency."  *See id.* § 552(f)(1).  Neither resembles something like the Department of Defense, *see Rose v. Dep't of Air Force,* 495 F.2d 261, 265–66 (2d Cir. 1974), or Department of Interior, *see Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 771 (D.C. Cir. 1974).  These entities are not military departments like a state's branch of the National Guard.  *See In re Sealed Case,* 551 F.3d 1047, 1049 (D.C. Cir. 2009).  They are not government

corporations like a home mortgage company subject to "substantial federal control over its day-to-day operations."  *See Rocap v. Indiek*, 539 F.2d 174, 177 (D.C. Cir. 1976).

Nor are the Judicial Conference or Administrative Office properly described as independent agencies.  Their governing statutes include no language naming either as an "independent agency."  *See, e.g.*, 42 U.S.C. § 901(a) (calling Social Security Administration an "independent agency"); 39 U.S.C. § 201 (calling United States Postal Service an "independent establishment"); 5 U.S.C. § 1101 (calling Office of Personnel Management an "independent establishment"); 15 U.S.C. § 2053(a) (calling Consumer Product Safety Commission an "independent regulatory commission").  Thus, the Judicial Conference and Administrative Office do not appear to be the type of entities Congress had in mind in creating FOIA—Executive Branch departments and independent agencies.

Rather, as part of the Judicial Branch, the Judicial Conference and the Administrative Office fall within FOIA's exception for "courts of the United States."  *Id.* § 551(1)(B).  Recall that the Judicial Conference serves as the Judiciary's policymaking body.  Tasks within its purview include: surveying "business in the courts of the United States," planning "for assignment of judges to or from circuits or districts where necessary," recommending policy "to the various courts to promote" management uniformity, and working with the United States Marshal Service on "security requirements."  28 U.S.C. § 331.

Meanwhile, the Administrative Office, through its Director, supervises "all administrative matters relating to the offices of clerks and other clerical and administrative personnel of the courts."  28 U.S.C. § 604(a)(1).  That includes fixing judicial employees' compensation, disbursing appropriated funds for the courts' operation, and purchasing property for the Judicial

Branch. *Id.* § 604(a). The Administrative Office, in short, is the Judiciary's back office, an extension of the various offices of the clerks of courts.

Nothing about either entity's structure suggests the President must supervise their employees or otherwise keep them "accountable," as is the case for executive officers. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010). Rather, the Administrative Office answers to the Judicial Conference and Supreme Court, *see* 28 U.S.C. § 601, and the Judicial Conference is run by the Chief Justice of the United States, *see id.* § 331. That makes sense. The Judicial Conference, like Article III courts, is "composed of Article III judges." *See Tashima v. Admin. Off. of U.S. Cts.*, 967 F.2d 1264, 1270 n.2 (9th Cir. 1992). In fact, the whole point of creating the Judicial Conference and Administrative Office centered around giving courts "some management power," and diminishing Executive Branch control over them. *See Chandler v. Jud. Council of Tenth Cir. of U.S.*, 398 U.S. 74, 85 (1970). And assigning a degree of managerial authority to the courts is nothing new. The Constitution, after all, allows "the Courts of Law," not just the Executive, to appoint some "inferior Officers." U.S. Const., art. II § 2, cl. 2.

Likewise, neither's tasks involve the "execution of the law in a meaningful sense" as is the case for Executive Branch entities. *Bowsher v. Synar*, 478 U.S. 714, 732 (1986) (cleaned up). Consider *Bowsher*, where the Supreme Court deemed unconstitutional the Balanced Budget and Emergency Deficit Control Act's assignment of certain functions to the Comptroller General. *Id.* at 733. Under that Act, the Comptroller General had "ultimate authority to determine" certain "budget cuts," binding even the President to follow the Comptroller's conclusions in executing the Act. *Id.* at 718, 733. That power amounted to the exercise of "judgment concerning facts that affect[ed] the application of the Act," a power "typically" held

"by officers charged with executing a statute." *Id.* at 733.  Because the Comptroller, through "implement[ing] the legislative mandate," saw through "the very essence of 'execution' of the law," he wielded executive power.  *Id.*

Not so for the Judicial Conference and Administrative Office.  Neither makes policy decisions that bind the public (like Congress), or Executive Branch officials as *Bowsher* contemplated.  478 U.S. at 732–33.  Both entities support judicial operations.  The Administrative Office has "purely an administrative" role and "collect[s] information for use by the courts themselves."  *Chandler*, 398 U.S. at 97–98 (Harlan, J., concurring) (cleaned up); *see* 28 U.S.C. § 604(a).  This Court "know[s] of no authority for the proposition that courts' administrative . . . activities" must "be labelled as 'executive' simply because" they are "non-adjudicative in character."  *See Hastings v. Jud. Conf. of U.S.*, 829 F.2d 91, 99 n.36 (D.C. Cir. 1987) (internal citation omitted).  Rather, such "ministerial and mechanical" duties fall outside the realm of meaningful law execution that *Bowsher* contemplates.  478 U.S. at 732.

The Judicial Conference, meanwhile, provides a chance for "friendly interchange among judges" to better understand "problems of judicial administration."  *Chandler*, 398 U.S. at 97–98 (Harlan, J., concurring).  It studies and addresses those problems ranging from judicial assignments to security needs.  *See* 28 U.S.C. § 331.  Sometimes, to be sure, it participates in policymaking processes, as when it "recommend[s]" changes to the Federal Rules of Civil Procedure to the Supreme Court for its "consideration" and potential adoption,  *id.*, but even in that example, its role is an advisory one.  When the Judiciary makes binding policy, it does so only to regulate itself and Judicial Branch procedures and operations.  *See, e.g.*, *Report of the Proceedings of the Judicial Conference of the United States*, United States Courts, Sept. 16, 2025, https://perma.cc/T2SS-5UU8 (summarizing a variety of the Conference's recent

operational and procedural decisions).  None of these features suggests that the Judicial Conference is properly understood as an Executive Branch entity.

This conclusion aligns with the Supreme Court's teaching in *Mistretta v. United States*, 488 U.S. 361 (1989).  *Mistretta* involved a separation-of-powers challenge to the U.S. Sentencing Commission.  *Id.* at 397.  Though the Sentencing Commission is formally "locate[d]" in the Judicial Branch, *see id.* at 385, it makes policy judgments about criminality by promulgating sentencing guidelines, 28 U.S.C. § 991.  Petitioners thus argued that the Commission impermissibly "unites both judicial and legislative power" in the Judicial Branch. *Mistretta*, 488 U.S. at 391–92.  But the Court rejected that argument and found no constitutional problem with the Commission's "unique composition and responsibilities."  *Id.* at 384, 397.

How *Mistretta* arrived there proves helpful guidance.  As the Court explained, its "approach to other nonadjudicatory activities that Congress ha[d] vested in federal courts or in auxiliary bodies within the Judicial Branch" suggested that the Sentencing Commission could consistently exist in the Judicial Branch.  *Id.* at 388.  What were those auxiliary bodies?  "The Judicial Conference of the United States" and "the Administrative Office of the United States Courts."  *Id.*  "[E]stablished practice," had shown the Court "recognized Congress' power to create" these entities.  *Id.*  The delegations to the Judiciary, according to the Court, posed no constitutional issues as long they were "appropriate to the central mission of the Judiciary" and involved no entrenchment "upon the prerogatives of another Branch."  *Id.*  The Judicial Conference and Administrative Office's constitutional inoffensiveness, in other words, supported the Sentencing Commission's.

*Mistretta* leaves little room for debate here.  Deeming the Judicial Conference and Administrative Office properly established Judicial Branch entities alone forecloses the notion

that either is an Executive Branch agency. *Id.* But even had the Court not named them, the

result is the same. Whether the Judicial Conference and Administrative Office properly exist

within the Judicial Branch poses an easier question than it did for the Sentencing Commission.

The problem for the Commission's status as a Judicial Branch entity stemmed from its power to

make policy judgments about criminality by promulgating sentencing guidelines. *See id.* at 369;

28 U.S.C. § 991. And even still, the Supreme Court deemed it constitutional. *Mistretta*, 488

U.S. at 390. The Judicial Conference and Administrative Office pose far less of (if any) a

separation-of-powers threat. By collectively addressing intra-branch issues (Judicial

Conference) and otherwise handling court operations (both), each entity merely sees through

"fair and efficient fulfillment of responsibilities that are properly the province of the Judiciary."

*Id.* at 389. They carry out "administrative or rulemaking duties that . . . are necessary and proper

. . . for carrying into execution all the judgments which the judicial department has power to

pronounce." *Id.* (cleaned up). If the Sentencing Commission constitutionally exists within the

Judicial Branch, the same is true for these entities.

     In line with these observations, courts consistently reject arguments that either the

Administrative Office or the Judicial Conference qualifies as an executive agency subject to

FOIA. *See Isiwele v. United States HHS*, 85 F. Supp. 3d 337, 353 (D.D.C. 2015) ("FOIA does

not apply to the Administrative Office of the United States Courts because it is an arm of the

judicial branch, which is not subject to FOIA."); *Hairston v. Admin. Off. of the U.S. Cts.*, No. 25-

1139, 2025 U.S. Dist. LEXIS 86498, at *1 (D.D.C. Apr. 30, 2025) (concluding that the

Administrative Office "is not obligated to respond because it is not subject to FOIA requests")

(cleaned up); *Adams v. Comm. on Jud. Conduct & Disability*, 165 F. Supp. 3d 911, 918 (N.D.

Cal. 2016) (noting that "FOIA specifically *exempts* the judicial branch" in a case involving a

Judicial Conference Committee) (emphasis in original); *Wayne Seminoff Co.* v. *Mecham*, No. 02-2445, 2003 U.S. Dist. LEXIS 5829, at *12 (E.D.N.Y. Apr. 10, 2003) (rejecting FOIA claims against the Administrative Office as "part of the judicial branch" and "not an agency" for FOIA purposes). The Court knows of no authority requiring either entity to respond to a FOIA request. And it sees no reason to stray from that well-trodden path. Neither the Judicial Conference nor the Administrative Office qualifies as an agency for FOIA purposes.

America First's strongest counterargument focuses on FOIA's reference to "the courts." It claims that, by excluding "the courts" from its coverage, FOIA refers only to judges and their law clerks, who directly see through courts' Article III duties. In its view, that exemption does not include other Judicial Branch entities like the Judicial Conference and Administrative Office. Hr'g Tr. 24:15–25. This understanding of FOIA takes too cramped a read of the statutory provision at hand. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 356 (2012) ("[A] sterile literalism . . . loses sight of the forest for the trees.") (quoting *New York Tr. Co. v. Commissioner*, 68 F.2d 19, 20 (2d Cir. 1933) (L. Hand, J.)).

True enough, as America First claims, one might construe "the courts" to include only those who resolve cases—judges. But that is not always true. In some contexts, one understands "the courts" to encompass the institutional and administrative superstructure supporting case resolution. To determine which meaning governs, the Court looks to the context. "In common language," as Chief Justice Marshall once explained, "the same word has various meanings, and the peculiar sense in which it is used in any sentence is to be determined by the context." *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 19 (1831). Here, the context suggests that "the courts" covers the entire Judicial Branch.

To start, recall that FOIA's definition of "agency" targets primarily Executive Branch entities. *See* 5 U.S.C. § 552(f)(1); *supra* at 8–10. It explicitly lists several Executive Branch institutions while omitting any Legislative or Judicial Branch equivalent. 5 U.S.C. § 552(f)(1). That Executive Branch focus suggests that the remaining two branches, not parts of them, escape FOIA. More, FOIA's list of exclusions from the definition of "agency" speaks in broad strokes when it comes to the Legislative and Judicial Branches. *Id.* § 551(A)–(B). Congress could have listed specific entities in either branch, as it did for the Executive, but it listed only "Congress" and "the courts." *See id.* That choice, again, suggests that FOIA's exclusion for "the courts" contemplates a branch, not its components. *See Inst. S'holder Servs., Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757, 767 (D.C. Cir. 2025) ("If the Congress in one provision uses a specific term . . . and in neighboring provisions . . . us[es] broader language, we may infer that the Congress meant something different in its choice of the specific term.").

Indeed, if America First were right that only judges and "law clerks," who "directly report[] to the judge," count as part of "the courts," numerous questions arise, and senseless line drawing ensues. Hr'g Tr. at 24:23–25. As America First sees things, "law clerks are in" the definition of courts, but "the clerk's office is not." *Id.* at 27:4–15. "[M]agistrate judges *may* be in," but the Administrative Office is certainly not. *Id.* (emphasis added). Where does that leave courtroom deputies or court reporters? Why should law clerks, who are not themselves constitutional officers, be immune from FOIA's reach? And what about the Tax Court, which is part of the Executive Branch but has been held immune from FOIA? *See Elec. Privacy Info. Ctr. v. Natl. Sec. Comm'n,* 419 F. Supp. 3d 82, 93 (D.D.C. 2019) (discussing *Byers v. U.S. Tax Court,* 211 F. Supp. 3d 240 (D.D.C. 2016)). And what rule is to guide these inquiries? To these

questions, America First merely acknowledges that indeed, courts "need to draw a line somewhere." Hr'g Tr. at 23:15–17.

But setting "the courts" in its proper context, FOIA involves no such arbitrariness. Rather, FOIA's exclusion reflects that courts include a full range of "judicial adjuncts," from "clerks" to "court reporters," who performs "tasks that are an integral part of the judicial process." *See Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993); *Wiggins v. New Mexico State Supreme Ct. Clerk*, 664 F.2d 812, 815 (10th Cir. 1981) ("[N]o court can discharge its judicial duties without the aid of clerks, servants and agents.") (cleaned up).

Consider FOIA's exemption for the Legislature. FOIA exempts "the Congress" from § 551's definition of "agency." Presumably, this is why America First did not direct its requests to Sen. Whitehouse and Rep. Johnson. But "Congress," in this context, does not include only the 535 voting members and the staffers directly reporting to them, as America First argues. Hr'g Tr. at 38:5–9. If that were correct, Congress's "HR department[s]," the "Architect of the Capital, Library of Congress, the general counsel," and the "sergeant at arms" would all fall outside the exclusion and potentially within FOIA's reach. *Id.* at 39:4–9. But FOIA draws none of these distinctions explicitly or otherwise suggests that the Court should. That comes as no surprise. These entities support Congress's core legislating function. Each helps make it possible for legislators to perform their jobs by, for example, taking care of congressional buildings, *see Pulphus v. Ayers,* 909 F.3d 1148, 1150 (D.C. Cir. 2018) (Architect of the Capitol), or handling payroll, *see Romney v. United States*, 167 F.2d 521, 522 (D.C. Cir. 1948) (sergeant of arms). They fit comfortably within the Legislative, not Executive, Branch. Without such "auxiliary bodies," Congress cannot legislate just as courts cannot resolve cases. *See Mistretta*, 488 U.S. at

389. By capturing the Judicial and Legislative Branches as opposed to their components, FOIA reflects that reality.

All of this explains why case law consistently interprets "courts" to cover the entire Judicial Branch in this setting. *Mayo v. U.S. Gov't Printing Off.*, 9 F.3d 1450, 1451 (9th Cir. 1993) ("Just as the [FOIA] in excluding 'the courts of the United States,' 5 U.S.C. § 551(1)(B), excludes not only the courts themselves but the entire judicial branch, so the entire legislative branch has been exempted from the Freedom of Information Act."); *United States v. Casas*, 376 F.3d 20, 22 (1st Cir. 2004) ("The judicial branch is exempt from the Freedom of Information Act."); *Isiwele*, 85 F. Supp. 3d at 353 ("The phrase 'courts of the United States' is interpreted such that this exemption applies to the entire judicial branch of government.") (cleaned up); *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 231 (D.D.C. 2008) (same).

The same is true in other, similar settings. In an Administrative Procedure Act case, for instance, the D.C. Circuit has observed that "virtually every case interpreting the APA exemption for 'the courts of the United States' has held that the exemption applies to the entire judicial branch—*at least* to entities within the judicial branch that perform functions that would otherwise be performed by courts." *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (emphasis added). The APA's definition of "agency," as the D.C. Circuit explained, targeted only Executive Branch entities, leading numerous courts to conclude that the Act's exemptions for "courts" targeted more "judicial authorities than the courts themselves." *Id.* (cleaned up). Entities like the Judicial Conference and Administrative Office—that act as an "auxiliary" of the "courts themselves"—fall under that umbrella. *Id.* (cleaned up).

Likewise, when it comes to the Legislature, courts consistently conclude that "Congress" refers not just to the Senate and House of Representatives, but to "the entire legislative branch."

*Id.* (emphasis omitted); *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985) (interpreting the APA's exemption for "Congress" to include the Library of Congress); *Mayo*, 9 F.3d at 1451 (interpreting FOIA's exemption for "Congress" to include the Government Printing Office). America First fails to explain why FOIA's exemption for "Congress" and "the courts" should be construed differently than the APA's identical exemptions.

Turning from the text, America First invokes *Tashima v. Administrative Office of the United States Courts* as support, yet still comes up short. 967 F.2d 1264 (9th Cir. 1992). In *Tashima*, a judge sued over the Administrative Office's denial of litigation funds for a lawsuit in which the judge was sued in his official capacity. *Id.* at 1266–67. True, *Tashima* described the Administrative Office as a "non-Article III entity." *Id.* at 1270. But it also noted that the Administrative Office "works for the judiciary." *Id.* at 1269. Given this Court's conclusion that FOIA's exemption applies to the whole Judicial Branch, *Tashima*'s description of the Administrative Office as a non-Article III entity within that branch does little here.

In any case, America First walked away from *Tashima* at oral argument. When faced with *Tashima*'s conclusion that the Judicial Conference is "properly considered" an "Article III entit[y]" given its composition of "Article III judges who possess the required attributes of life tenure and guaranteed salary," *id.* at 1270 n.2, America First distanced itself from the entire case. What matters, it explained, is "not necessarily *Tashima*" and its distinction between Article III and non-Article III entities, but whether an entity is "a court of the United States" according to FOIA's text. Hr'g Tr. 34:10–15; 35:7–10. So even if this out-of-circuit interpretation of an unrelated statute had persuasive value to start, America First has cast it aside.

America First also claims that the Judicial Conference and Administrative Office's power to issue investigative subpoenas and respond to congressional oversight requests renders both executive agencies. *See* Resp. at 1, ECF No. 19.  Not so.  After all, Congress, too, may issue investigatory subpoenas and America First does not contend (nor could it) that Congress impermissibly sees out "quintessentially executive" functions. *See id.* at 18; *Trump v. Mazars USA, LLP*, 591 U.S. 848, 853 (2020) ("We have held that the House has authority under the Constitution to issue subpoenas to assist it in carrying out its legislative responsibilities.").  And if anything, subpoena issuance is primarily conducted by the Judiciary.  By carrying out tasks that keep the Judiciary running, Judicial Branch entities do not become part of the Executive.

America First next embraces *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1995), to no avail. *Armstrong* addressed whether the National Security Council, an entity all agreed was part of the Executive Branch, was so closely associated with the President (who is exempt from FOIA) that FOIA did not apply to it. *Id.* at 555. *Armstrong* says nothing about the Judicial Branch, let alone whether by administering itself, it becomes an executive agency.

America First's final salvo fares no better.  It claims that the Administrative Office Director's status as an "officer" under Title 5 of the U.S. Code makes the entity an Executive Branch agency subject to FOIA.  Resp. at 14.  But  FOIA applies only to "'agencies,' not 'officers.'" *Wayne Seminoff*, 2003 U.S. Dist. LEXIS 5829, at *19; *see* 5 U.S.C. § 552(a).  And Title 5 lists the Administrative Office Directors as an "officer" for "employment benefits issues. It does not, in any way, make the Director of the [Administrative Office] subject to the provisions of FOIA." *Id.*  If all it took to render the Administrative Office an Executive Branch agency was one official's status as an officer, all federal courts would fall into the fold.  Article

III judges, after all, count as "officers" under Title 5.  But America First does not mount that argument.  Neither of these Judicial Branch entities come under FOIA.

**IV.**

Because this Court lacks subject matter jurisdiction, it will grant the motion to dismiss. An appropriate Order will issue today.


Dated: December 18, 2025                                   _____

                                                          TREVOR N. McFADDEN, U.S.D.J.